\*\*E-Filed 5/31/05\*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE NATIONAL LEAGUE OF POSTMASTERS OF THE UNITED STATES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> TENET HEALTHCARE CORPORATION, et al., <br><br> Defendants. | Case Number C-03-890-JF (PVT) <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS <br><br> [Doc. No. 90] |

Defendants move to dismiss Plaintiffs' second amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the briefing as well as the oral arguments presented at the hearing on May 27, 2005. For the reasons discussed below, the motion to dismiss will be granted in part and denied in part.

## I. BACKGROUND

The National League of Postmasters of the United States, Inc. and The National League of Postmasters Benefit Plan Trust, collectively, is a private provider of health insurance (hereinafter "Postmasters"). Postmasters is under contract with the United States Office of Personnel Management ("OPM") to provide benefits to federal postal employees. One such

1  employee, James Stiritz ("Stiritz"), suffered a stroke in 1997 while confined in the Santa Clara
2  County jail awaiting trial on criminal charges.  Stiritz initially was treated at Santa Clara Valley
3  Medical Center, but thereafter was transferred to the Community Hospital of Los Gatos, which is
4  owned and/or operated by Tenet Healthcare Corporation, Tenet Healthsystem Hospitals and
5  Tenet Healthsystem Healthcorp (collectively, "the Hospital").  Stiritz remained at the Hospital
6  for an extended period.  Postmasters was billed for the Hospital's services and paid
7  approximately $650,000 in medical costs under Stiritz's postal employee health insurance.
8       Postmasters commenced the instant action on February 28, 2003 in an effort to recover
9  monies paid to the Hospital for Stiritz's care.  Postmasters initially alleged state law claims for
10 unjust enrichment, payment by mistake and common law recoupment, asserting that because
11 Stiritz was in County custody, the County was responsible for his medical bills.
12      On October 8, 2003, the Court dismissed the complaint for failure to state a claim on the
13 ground that all of Postmasters' claims appeared to be time-barred.  At oral argument, Postmasters
14 argued that it was not aware that Stiritz was in County custody at the time he received treatment
15 or at the time Postmasters paid his medical bills.  The Court noted that Postmasters had not
16 alleged facts regarding its ignorance of Stiritz's custodial status, or its discovery of this status, in
17 the complaint.  The Court granted leave to amend so that Postmasters could allege such facts as
18 might implicate the delayed discovery rule.
19      On February 4, 2004, Postmasters filed a first amended complaint ("FAC") that added
20 two new plaintiffs, Thomas Ernst ("Ernst") and Adoline Shodiay ("Shodiay"), and added new
21 claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.  On March 1, 2005, the
22 Court dismissed the FAC on several grounds.  With respect to the FCA claims, the Court
23 concluded that the facts underlying the claims had been publicly disclosed and that as a result
24 Plaintiffs could not maintain the claims unless they were the original source of the information
25 giving rise to the FCA claims.  The FAC did not allege that Plaintiffs were the original source.
26 With respect to the state law claims, the Court concluded that Ernst and Shodiay had not alleged
27 injury to themselves and therefore lacked standing, and that Postmasters had failed to allege facts
28 demonstrating delayed discovery of its state law claims.  The Court granted Plaintiffs leave to

amend to attempt to cure these defects.

Plaintiffs filed the operative second amended complaint ("SAC") on March 18, 2005, asserting claims on behalf of Postmasters and Ernst; Shodiay no longer is named as a party plaintiff. The SAC alleges FCA claims as well as state law claims for fraud, negligent misrepresentation and unjust enrichment. As relevant here, the SAC alleges that OPM provides to Postmasters federal funds for the health benefits plan administered by Postmasters. SAC at ¶ 18. Postmasters nonetheless was failing financially, and in September 2000 entered into an agreement with Medicure Plus, Inc. ("Medicure"), a private corporation run by Ernst, to investigate Postmasters' financial losses and to manage Postmasters for a ten-year period. *Id.* at ¶ 21. This agreement was a formalization of a preexisting relationship between Postmasters and Ernst and Medicure; apparently, Ernst and Medicure already had been investigating Postmaster's financial losses without benefit of a formal written contract. *Id.* In the course of investigating Postmasters' financial losses, Ernst came up with the idea of a forensic audit of the 100 highest payees under the Postmasters health plan. *Id.* at ¶ 27. The audit was Ernst's idea; it was not required by Postmasters or OPM, nor did Postmasters or OPM provide any input or direction. *Id.*

In the course of the audit, Ernst reviewed Postmasters' payment of approximately $650,000 in medical bills for Stiritz's care at the Hospital. SAC at ¶ 30. Ernst discovered that Stiritz had been in the custody of Santa Clara County at the time he received treatment at the Hospital. *Id.* at ¶ 52. Based upon this information, Ernst believed that the County should have been billed for Stiritz's care rather than Postmasters. *Id.* Ernst informed OPM that Postmasters had paid for Stiritz's care while he was in County custody and sought verification of his conclusion that such payments were improper. *Id.* at ¶ 53. OPM agreed with Ernst's conclusion. *Id.*

During the course of the audit, Ernst also discovered that the Hospital had billed for and received payments from Postmasters for skilled nursing services and custodial or long term maintenance care. SAC at ¶ 55. The Hospital allegedly knew that such care was not covered under the Postmasters health plan, and deliberately misrepresented the nature of the services provided so as to receive payment. *Id.*

1  The Hospital moves to dismiss Plaintiffs' FCA claims pursuant to Rule 12(b)(1) on the
2  grounds that Plaintiffs' own allegations demonstrate that the Court lacks subject matter
3  jurisdiction, and pursuant to Rule 12(b)(6) on the ground that it did not present any claims for
4  payment to the federal government.  The Hospital also moves to dismiss Plaintiffs' state law
5  claims as time-barred pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

**A.    Rule 12(b)(1)**

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the moving party asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction.  *Id*.  In a factual attack, the moving party disputes the truth of the allegations in the complaint, which otherwise would be sufficient to invoke federal jurisdiction.  *Id*.  In resolving a facial attack, the Court accepts the allegations in the complaint as true.  *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).  In resolving a factual attack, the Court need not presume the truthfulness of the allegations set forth in the complaint and may consider evidence beyond the face of the complaint without converting the motion to dismiss into a motion for summary judgment.  *Id*.; *Safe Air*, 373 F.3d at 1039.  Once the moving party has presented affidavits or other evidence tending to show that subject matter jurisdiction does not lie, the plaintiff must present affidavits or other evidence sufficient to establish subject matter jurisdiction.  *Safe Air*, 373 F.3d at 1039.

"[J]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional."  *Safe Air*, 373 F.3d at 1039 (internal quotation marks and citation omitted).  Dismissal usually is inappropriate when the question of jurisdiction is intertwined with the merits of the action, for example, when "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief."  *Id*. (internal quotation marks and citation omitted).  Under these circumstances, a motion to dismiss for lack of subject matter jurisdiction is appropriate only if the allegations set forth in the complaint are frivolous.  *Id*. at 1040.

**B.     Rule 12(b)(6)**

For purposes of a motion to dismiss under Rule 12(b)(6), the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Argabright v. United States*, 35 F.3d 472, 474 (9th Cir. 1994). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988); *Beezley v. Fremont Indemnity Co.*, 804 F.2d 530, 531 (9th Cir. 1986).

## III. DISCUSSION

**A.     FCA Claims**

**1.     Rule 12(b)(1) Challenge**

The Hospital asserts a facial challenge to Postmasters' FCA claims; the motion is unaccompanied by any affidavits or other extrinsic evidence.

As discussed more extensively in the Court's prior Order of March 1, 2005, this Court lacks jurisdiction over an FCA claim if there has been public disclosure of the allegations or transactions underlying the claim *unless* the relator is an original source of information. 31 U.S.C. § 3730(e)(4); *A-1 Ambulance Serv., Inc. v. State of California*, 202 F.3d 1238, 1242 (9th Cir. 2000). For purposes of the statute, an "original source" is an individual who has direct and independent knowledge of the information in question and has voluntarily provided such information to the Government before filing an FCA claim. 31 U.S.C. § 3730(e)(4).

It is unclear whether there was a public disclosure of the information underlying the FCA claims at issue before they were filed. The Hospital cites a Seventh Circuit case, *United States v. Bank of Farmington*, 166 F.3d 853, 859-62 (7th Cir. 1999), for the proposition that disclosure to a public agency constitutes public disclosure within the meaning of the FCA, and thus that Ernst's disclosure to OPM raises the public disclosure bar. Postmasters contends that other courts have taken the opposite approach, but the cases it cites do not directly contradict the holding of *Farnington*. Accordingly, it appears that Ernst's disclosure to OPM may have

constituted a public disclosure within the meaning of the statute. Similarly, it appears that the filing of the original complaint in this matter may have constituted a public disclosure. The Hospital cites a Ninth Circuit case, *United States v. Alcan Elec. & Engineering, Inc.*, 197 F.3d 1014 (9th Cir. 1999), in which the court held that a proposed complaint lodged in one federal district court action constituted a public disclosure sufficient to bar a later-filed complaint in another district court action. Postmasters argues that *Alcan* is distinguishable from the instant action, because here all the pleadings were filed in the same action, citing an unpublished district court decision from the Eastern District of Washington in support.

      Even assuming that the information giving rise to the FCA claims was publicly disclosed, Ernst has alleged facts sufficient to demonstrate that he is an original source. The SAC alleges that Ernst was hired by a private agency, Postmasters, to investigate its financial losses and assume its management. The SAC further alleges that Ernst came up with the idea of doing an internal audit for Postmasters, that during the course of this audit he ran across the facts giving rise to the FCA claim against the Hospital, and that he voluntarily reported these facts to OPM. The Hospital cites authority for the proposition that when an individual is obligated to report fraud or abuse to government officials, that individual's reporting of such fraud or abuse does not constitute a "voluntary" disclosure within the meaning of the FCA. *See, e.g., United States ex rel. Fine v. Chevron, USA*, 73 F.3d 740 (9th Cir. 1995). While the Hospital ultimately may be able to prove that Ernst was obligated to report the alleged fraudulent billing in this case to OPM, such obligation is not clear from the pleadings, and in fact is directly contradicted by the allegations of the SAC. Because the Court must take the allegations in the complaint as true, the Court cannot grant the Hospital's 12(b)(1) motion on this basis.

      The Hospital points out that the burden is on relators to allege facts sufficient to demonstrate jurisdiction under the FCA, *see United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004), and argues that Plaintiffs have not met this burden here. The Court agrees that Ernst has the burden of articulating "facts demonstrating [that] his direct and independent knowledge is marked by the absence of an intervening agency" and is the product of his own labor. However, the Court concludes that Ernst has alleged facts that raise at least a

6
Case No. C-03-890-JF (PVT)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

substantial question as to this issue. Because this is a facial challenge, and because the question of federal jurisdiction is intertwined with Ernst's claims on the merits of his FCA claim, the Court concludes that dismissal would be inappropriate under the authorities discussed above.

### 1.   Rule 12(b)(6) Challenge

The Hospital argues that even if the public disclosure bar does not apply, Plaintiffs have failed to allege "presentment" of a false claim to the government. The statute defines a false claim as "any request or demand … which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). The Ninth Circuit has made clear that the submission of false claims for payment to a private carrier under contract with the federal government suffices. *See United States v. Mackby*, 261 F.3d 821, 824 (9th Cir. 2001). The Hospital attempts to distinguish *Mackby*, which addresses Medicare claims, on the basis that under the Medicare program federal funds are passed directly to providers to pay for claims, while Postmasters receives lump federal sums unrelated to specific patient claims. The Hospital argues that the instant scenario is much closer factually to a case from the District of Columbia in which the court held that the claim presentment requirement was not met. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004). The Hospital ultimately may be able to prove that sending bills to Postmasters was insufficient to meet the claim presentment requirement. But as with the original source issue, the record is simply undeveloped on this point and Plaintiffs have articulated specific facts indicating that federal funds were used to pay the Hospital's bills.

Based upon the facts alleged in the FAC, the Court concludes that Ernst has stated viable FCA claims against the Hospital. The Court notes that Postmasters also is alleged to be a relator. However, the SAC does not contain allegations sufficient to support such an allegation. Accordingly, the FCA claims asserted by Postmasters will be dismissed without leave to amend.

### B.   Common Law Claims

Postmasters asserts common law claims for fraud, negligent misrepresentation and unjust

enrichment. The Court previously dismissed these claims on the ground that they appeared to be time-barred under the applicable three-year statute of limitations. The Court granted leave to amend so that Postmasters could attempt to plead delayed discovery. The SAC explicitly alleges that at the time the Hospital's bills were presented and paid Postmasters had no idea that Stiritz was in County custody or that the Hospital was disguising uncovered services as covered services. The SAC further alleges that Ernst first discovered these facts when he conducted the internal audit in October 2000. The instant action was filed less than three years later, on February 28, 2003. These allegations are sufficient for pleading purposes. Accordingly, the Court will deny the Hospital's motion to dismiss on statute of limitations grounds.

## V. ORDER

Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is GRANTED WITHOUT LEAVE TO AMEND insofar as Postmasters is alleged to be a relator with respect to the FCA claims, and otherwise is DENIED.

DATED: 5/31/05

/s/ electronic signature authorized
_____
JEREMY FOGEL
United States District Judge

1  This Order was served on the following persons:

3  Michael J. Bononi    mcarroll@bononilawgroup.com, lbononi@bononilawgroup.com

4  Joanne Renee Carlson    Joanne.Carlson@sdma.com, silvia.traughber@sdma.com

5  Michelle M. Carroll    mcarroll@bononilawgroup.com

6  Lil G. Delcampo    ldelcampo@health-law.com,

7  Patric Hooper    phooper@health-law.com,

8  Rebecca A. Hull    rebecca.hull@sdma.com, cristi.hursh@sdma.com;sdmacalendaring@sdma.com

9  Pamela K. Riley    priley@health-law.com, blergent@health-law.com

Case No. C-03-890-JF (PVT)
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
(JFLC2)